**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
MARTINSBURG**

**KEENAN A. DAVIS,**

> **Plaintiff,**

**v.**                                                    **Civil Action No. 3:20-CV-155
(GROH)**

**LT. ABDUL AZIZ,
NURSE SENKO,
P. A. HOOVER,
CO LISTON
CO OWENS,
CORRECTIONAL OFFICER HUNT,
JOE COAKLEY, Warden,**

> **Defendants.**

## REPORT AND RECOMMENDATION

### I. INTRODUCTION

On August 24, 2020, the *pro se* Plaintiff, who is currently a federal prisoner incarcerated at Schuykill FCI, in Minersville, Pennsylvania, initiated this case by filing an action pursuant to Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388 (1971), claiming his Constitutional rights were violated.   ECF No. 1.[1] Plaintiff was previously confined at USP Hazelton in Bruceton Mills, West Virginia. It was during his confinement at USP Hazelton that the events occurred which led to this civil action being filed.

---

[1]  All CM/ECF numbers cited herein are from the instant case, 3:20-CV-155, unless otherwise noted.

Defendants filed a motion to dismiss, or for summary judgment, a memorandum and exhibits in support thereof on October 8, 2021. ECF Nos. 30, 30-1 through 30-11.

The matter is now before the undersigned United States Magistrate Judge for a Report and Recommendation to the District Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and LR PL P 2. For the reasons set forth below, the undersigned recommends that Plaintiff's complaint be dismissed with prejudice.

## II. FACTUAL AND PROCEDURAL HISTORY

In his complaint, Plaintiff named as defendants four Correctional Officers, two medical personnel, and the warden. ECF No. 1. In his grounds[2] for relief, Plaintiff asserts that defendants were deliberately indifferent to his serious medical condition, and that correctional officers used excessive force when transporting him which worsened his medical condition, and that both acts violated his civil rights. Id. Plaintiff claims that on October 6, 2018, around 1:30 a.m. he first felt ill. Upon reporting his illness to correctional officers, he was placed in a separate cell in the Lieutenant's office for two hours until the Defendant Nurse Senko arrived. Id. at 7 – 8. Nurse Senko checked his vitals without examining his abdomen. Id. at 8. Plaintiff further asserted that by 8:30 a.m., he was so ill he could not get off the floor. Id. at 9 – 10. At that time, Plaintiff asserts that Defendant Lt. Abdelaziz[3] directed other officers to take Plaintiff back to his unit, and that in response, Correctional Officer Defendants Liston and Owens "grabbed [his] upper arms and shoulders" and dragged him back to his unit. Id. at 10. Plaintiff claims that his feet were dragging, and he could barely lift his feet. Id. at 11. Plaintiff contends that this treatment

---

[2] Although Plaintiff used the space on the Court-approved form for only one ground for relief, it appears to the Court that Plaintiff asserts two claims: (1) failure to provide medical care; and (2) excessive use of force which caused or exacerbated his medical problem.

[3] In a declaration filed by Defendants with their motion to dismiss, Defendant "Aziz" identifies himself as "Tamer Abdelaziz". ECF No. 30-6. The Court uses the spelling as identified by Plaintiff.

caused him to suffer "ulcer ruptures" which required surgery to repair.  Id. at 12.  Finally, Plaintiff claims that the correctional officers who rolled him off a stretcher onto the floor and then dragged him to his cell caused or exacerbated the ulcer ruptures.  Id.

Plaintiff claims these actions constituted cruel and unusual punishment and injured him by causing him pain and suffering, permanent scarring from surgery, and mental anguish.  Id. at 13.

Attached to the complaint are additional pages, and a number of exhibits and administrative remedy documents including: the February 6, 2020, Administrative Claim Number TRT-MXR-2019-01215 [ECF No. 1-1]; a small claims request [Id. at 2]; administrative remedy HAX-1330.18, dated February 3, 2018[4] [Id. at 3]; a typewritten document dated October 28, 2018 [Id. at 4]; documents from administrative remedy numbers 959938-F1, 959938-R2, and 959938-A1 [Id. at 5 – 10].

Plaintiff seeks the following relief from each defendant: (1) $100,000.00 for cruel and unusual punishment; (2) $500,000.00 for pain and suffering; (3) $500,000.00 for mental anguish; and (4) $50,000.00 for mental anguish.[5]  Additionally, Plaintiff seeks $75,000.00 each from Defendants Abdelaziz, Owens, Hunt and Liston for causing the rupture, and $100,000.00 from Defendant Coakley for neglecting his duty.  ECF No. 1 at 13 – 14.

Defendants filed a motion to dismiss, or in the alternative, for summary judgment, along with a memorandum and exhibits in support thereof, on October 8, 2021.  ECF Nos. 30, 30-1 through 30-11.  Additional documents were filed under seal on October 12, 2021.

---

[4]  At the top the document is dated February 3, 2014, but lists an event date of "6 Oct 18" at the bottom of the document, with the date the form was issued listed as "29 Oct 18".  ECF No. 1-1 at 3.

[5]  Although previously asserted, Plaintiff reiterates his claim for relief for mental anguish as to each defendant, only the demand is reduced to $50,000.  ECF No. 1 at 14.

ECF No. 35.   Defendants argue that Plaintiff is not entitled to relief on the following grounds: (1) Defendant Corrections Officers' actions did not constitute sufficient excessive force necessary to establish an Eighth Amendment violation; (2) Defendant Coakley lacked the requisite personal involvement to establish an Eighth Amendment violation and the doctrine of respondeat superior does not apply in <u>Bivens</u> actions; (3) Plaintiff fails to demonstrate that Defendants acted with deliberate indifference to sustain a cognizable <u>Bivens</u> claim; (4) Defendants are entitled to qualified immunity.  ECF No. 30-1.

Plaintiff filed a response to the Defendants' motion to dismiss on November 4, 2021. ECF No. 39.   Therein, Plaintiff contends that his complaint sets forth sufficient facts to withstand Defendants' motion, and reasserts his claims against Defendants, and specifically asserts that: (1) "Plaintiff's Bivens claims warrant a finding of guilty" because Defendants' use of force constituted an Eighth Amendment violation; (2) Plaintiff's claims against Defendant Coakley should be presented to a jury; (3) Plaintiff's claims show that Defendants acted with deliberate indifference to sustain his Bivens claim; and (4) Defendants are not entitled to qualified immunity because they committed constitutional violations.  <u>Id.</u> at 4.

Defendants filed a reply on November 10, 2021, which asserts that Plaintiff offered "nothing more than conclusory argument" that matches that presented in his initial complaint.  ECF No. 41.

Plaintiff filed a response in surrebuttal on November 22, 2021, which appears to be a photocopy of his response previously filed on November 4, 2021.  ECF No. 42.

### III.  LEGAL STANDARD

**A.      Pro Se Litigants**

Because Plaintiff is a prisoner seeking redress from a governmental entity or

employee, the Court must review the complaint to determine whether it is frivolous or malicious.  Pursuant to 28 U.S.C. § 1915A(b), the Court is required to perform a judicial review of certain suits brought by prisoners and must dismiss a case at any time if the Court determines that the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief against a defendant who is immune from such relief.

Courts must read *pro se* allegations in a liberal fashion.  Haines v. Kerner, 404 U.S. 519, 520 (1972).  However, a complaint is frivolous if it is without arguable merit either in law or in fact.  Neitzke v. Williams, 490 U.S. 319, 325 (1989) (superseded by statute).  The Supreme Court in Neitzke recognized that:

> Section 1915(d)[6] is designed largely to discourage the filing of, and waste of judicial and private resources upon, baseless lawsuits that paying litigants generally do not initiate because of the costs of bringing suit and because of the threat of sanctions for bringing vexatious suits under Federal Rule of Civil Procedure 11. To this end, the statute accords judges not only the authority to dismiss a claim based on an indisputably meritless legal theory, but also the unusual power to pierce the veil of the complaint's factual allegations and dismiss those claims whose factual contentions are clearly baseless. Examples of the former class are claims against which it is clear that the defendants are immune from suit. . .

490 U.S. at 327.

### B.   Civil Rights Actions Under Bivens

In Bivens, supra, the Supreme Court recognized that claimants may assert a cause

---

[6]  The version of 28 U.S.C. § 1915(d) which was effective when Neitzke was decided provided, "The court may request an attorney to represent any such person unable to employ counsel and may dismiss the case if the allegation of poverty is untrue, or if satisfied that the action is frivolous or malicious." As of April 26, 1996, the statute was revised and 28 U.S.C. § 1915A(b) now provides, "On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint-- (1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief."

of action for damages caused by federal agents.  In <u>FDIC v. Meyer</u>, 510 U.S. 471, 484 - 86 (1994), the Court held that federal agencies may not be held liable in a <u>Bivens</u> claim, writing, "*Bivens* from its inception has been based . . . on the deterrence of individual officers who commit unconstitutional acts."  <u>Id.</u>  See <u>Correctional Services Corp. v. Malesko</u>, 534 U.S. 61, 71 (2001).

Pursuant to <u>Bivens</u>, an individual federal agent may be found liable for actions "in excess of the authority delegated to him."  403 U.S. at 397.  "The purpose of *Bivens* is to deter individual federal officers from committing constitutional violations."  <u>Corr. Servs. Corp. v. Malesko</u>, 534 U.S. 61, 70 (2001).  The Supreme Court further explained in <u>Malesko</u>:

> If a federal prisoner in a BOP facility alleges a constitutional deprivation, he may bring a *Bivens* claim against the offending individual officer, subject to the defense of qualified immunity. The prisoner may not bring a *Bivens* claim against the officer's employer, the United States, or the BOP. With respect to the alleged constitutional deprivation, his only remedy lies against the individual.

534 U.S. at 72.  Further, in a <u>Bivens</u> case, the Plaintiff must specify the acts taken by each defendant which violate his Constitutional rights.  <u>Wright v. Smith</u>, 21 F.3d 496, 501 (2nd Cir. 1994); <u>See</u> <u>Colburn v. Upper Darby Township</u>, 838 F.2d 663, 666 (3rd Cir. 1988) ("section 1983 claims[7] [have] the additional pleading requirement that the 'complaint contain a modicum of factual specificity identifying the particular conduct of defendants that is alleged to have harmed the plaintiffs'").

---

[7]  The Court notes that <u>Bivens</u> actions and § 1983 actions are both civil rights actions, and that <u>Bivens</u> actions regarding deprivation of civil rights are the federal counterpart to state actions authorized by 42 U.S.C. § 1983.

"Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior." Ashcroft v. Iqbal, 556 U.S. 662, 676 (2009). "Because vicarious liability is inapplicable to Bivens and § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." Id. "A *Bivens* claim is brought against the individual official for his or her own acts, not the acts of others." Ziglar v. Abassi, 137 S.Ct. 1843, 1860 (2017).

In Shaw v. Stroud, 13 F.3d 791, 799 (4th Cir. 1994), the Fourth Circuit:

> set forth three elements necessary to establish supervisory liability under § 1983: (1) that the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed "a pervasive and unreasonable risk" of constitutional injury to citizens like the plaintiff; (2) that the supervisor's response to that knowledge was so inadequate as to show "deliberate indifference to or tacit authorization of the alleged offensive practices,"; and (3) that there was an "affirmative causal link" between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff.

(internal citations omitted). The Court further explained that, "[t]o satisfy the requirements of the first element, a plaintiff must show the following: (1) the supervisor's knowledge of (2) conduct engaged in by a subordinate (3) where the conduct poses a pervasive and unreasonable risk of constitutional injury to the plaintiff." Shaw, supra, citing Slakan v. Porter, 737 F.2d 368 (4th Cir. 1984).

"A plaintiff may establish deliberate indifference by demonstrating a supervisor's "continued inaction in the face of documented widespread abuses"; however, a plaintiff claiming deliberate indifference "assumes a heavy burden of proof." Shaw, 13 F.3d at 799. "Causation is established when the plaintiff demonstrates an "affirmative causal link" between the supervisor's inaction and the harm suffered by the plaintiff." Id.

### C.    Motions to Dismiss

Federal Rule of Civil Procedure 12(b)(6) permits dismissal of a case when a complaint fails to state a claim upon which relief can be granted.  The Federal Rules of Civil Procedure require only, "'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'" Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). Courts long have cited, "the accepted rule that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley, 355 U.S. at 45-46.

Plaintiff is proceeding *pro se* and therefore the Court must liberally construe his pleadings.  Estelle v. Gamble, 429 U.S. 97, 106 (1976); Haines v. Kerner, 404 U.S. 519, 520 - 1 (1972) (per curiam); Erickson v. Pardus, 551 U.S. 89, 94, 127 S.Ct. 2197 (2007). Although a complaint need not contain detailed factual allegations, a plaintiff's obligation in pleading, "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do...." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007).  Accordingly, "[f]actual allegations must be enough to raise a right to relief above the speculative level," to one that is "plausible on its face."  Id. at 555, 570.  In Twombly, the Supreme Court found that, "because the plaintiffs [ ] have not nudged their claims across the line from conceivable to plausible, their complaint must be dismissed." Id. at 570.  Thus, to survive a motion to dismiss, a plaintiff must state a plausible claim in his complaint which is based on cognizable legal authority and includes more than conclusory or speculative factual allegations.

"[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss." Ashcroft v. Iqbal, 556 U.S. 662, 679, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). Thus, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," because courts are not bound to accept as true a legal conclusion couched as a factual allegation. Id. at 678.   "[D]etermining whether a complaint states a plausible claim . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id. at 679.  Thus, a well-pleaded complaint  must offer more than, "a sheer possibility that a defendant has acted unlawfully," in order to meet the plausibility standard and survive dismissal for failure to state a claim. Id. at 678.

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly,  it does not resolve contests surrounding facts, the merits of a claim, or the applicability of defenses." Republican Party of North Carolina v. Martin, 980 F.2d 943, 952 (4th Cir. 1992) (citing 5A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1356 (1990)).  In considering a motion to dismiss for failure to state a claim, a plaintiff's well-pleaded allegations are taken as true and the complaint is viewed in the light most favorable to the plaintiff.  Mylan Labs, Inc. v. Matkari, 7 F.3d 1130, 1134 (4th Cir. 1993); see also Martin, 980 F.2d at 952.

### D.    Motion for Summary Judgment

Pursuant to Federal Rule of Civil Procedure 56(a), the Court shall grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  In applying the standard for summary judgment, the Court must review all the evidence in the light most favorable to the nonmoving party.  Celotex Corp. v. Catrett, 477 U.S. 317, 322–23 (1986). However,

"[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.  Factual disputes that are irrelevant or unnecessary will not be counted." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

In Celotex, the Supreme Court held that the moving party bears the initial burden of informing the Court of the basis for the motion to, "demonstrate the absence of a genuine issue of material fact."  477 U.S. at 323.  Once "the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to material facts." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).

"The movant has the burden of showing that there is no genuine issue of fact, but the plaintiff is not thereby relieved of his own burden of producing in turn evidence that would support a verdict." Anderson, supra, at 256. Thus, the nonmoving party must present specific facts showing the existence of a genuine issue for trial, meaning that "a party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials of [the] pleading, but must set forth specific facts showing that there is a genuine issue for trial." Id. The "mere existence of a scintilla of evidence" favoring the nonmoving party will not prevent the entry of summary judgment. Id. at 248.

To withstand such a motion, the nonmoving party must offer evidence from which a "fair-minded jury could return a verdict for the [party]." Id.   "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Felty v. Graves-Humphreys Co., 818 F.2d 1126, 1128 (4th Cir. 1987).  Such evidence must consist of facts which are material, meaning that they create fair doubt rather than

encourage mere speculation.  Anderson, supra, at 248.

Summary judgment is proper only "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party." Matsushita, supra, at 587. "Where the record as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" Id. citing First Ntl. Bank of Ariz. v. Cities Service Co., 391 U.S. 253, 289, 88 S.Ct. 155, 1592 (1968).  See Miller v. Fed. Deposit Ins. Corp., 906 F.2d 972, 974 (4th Cir. 1990).  Although any permissible inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion, where, the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, disposition by summary judgment is appropriate. Matsushita, supra, at 587-88. Anderson, supra, at 248-49.

## IV.  ANALYSIS

### A.    Improperly Named Defendant: Warden Coakley

In a Bivens case, the Plaintiff must specify the acts taken by each defendant which violate his Constitutional rights. Wright v. Smith, 21 F.3d 496, 501 (2nd Cir. 1994); See Colburn v. Upper Darby Township, 838F.2d 663, 666 (3rd Cir. 1988) ("section 1983 claims [have] the additional pleading requirement that the 'complaint contain a modicum of factual specificity identifying the particular conduct of defendants that is alleged to have harmed the plaintiffs'").  Moreover, "[i]n a Bivens suit, there is no respondeat superior liability.  Instead, liability is personal, based upon each defendant's own constitutional violations." Trulock v. Freeh, 275 F.3d 391, 402 (2001) (internal citation omitted).  In Trulock, although plaintiffs sued, among other defendants, the former director of the FBI and two FBI supervisors, the Court found that were there was "no allegation that

any of these [ ] individuals were personally complicit. . . [and] [a]ccordingly, th[o]se defendants [ ] enjoy immunity."  Id.

Plaintiff has named the warden of USP Hazelton, Joe Coakley[8], as a defendant herein.  The only allegation made by Plaintiff against Warden Coakley is that he "was notified but did nothing about it."  ECF No. 1 at 12.  Under the clear holding of Trulock, there is no doctrine of *respondeat superior* in Bivens actions, and thus, supervisory defendants may not be held liable for the actions of their subordinates.  Plaintiff does not allege that Warden Coakley took any affirmative action, simply that he failed to take action to overrule decisions made by medical personnel regarding Plaintiff's medical treatment. Accordingly, Plaintiff has failed to state a claim upon which relief can be granted against Defendant Coakley, and he should be dismissed from this action with prejudice.

Moreover, in reviewing claims of medical care, supervisors are entitled to rely on the judgment of the medical staff as to the course of treatment prescribed.  See Shakka v. Smith, 71 F.3d 162, 167 (4th Cir. 1995) (citing Miltier v. Beorn, 896 F.2d 848, 854 (4th Cir. 1990) (stating that supervisory prison officials are entitled to rely on professional judgment of trained medical personnel and may be found to have been deliberately indifferent by intentionally interfering with a prisoner's medical treatment ordered by such personnel).  Thus, even assuming Coakley, a supervisory Defendant, had notice of Plaintiff's concern regarding his medical treatment or lack thereof, that notice does not rise to the level of personal involvement for liability in this suit.  Further,

---

[8]  When this case was opened, through a clerical error Warden Coakley was not listed as a Defendant on the docket sheet.  However, on May 13, 2022, the Clerk made a docket revision to add both Warden Coakley and CO Hunt as defendants.  The Court notes that Defendants' motion to dismiss includes arguments regarding Warden Coakley's immunity from suit [ECF No. 30-1 at 8], and a declaration from CO Hunt [ECF No. 30-7].

to the extent that Coakley properly relied on any professional judgment of trained medical personnel regarding Plaintiff's medical needs, that reliance was proper based on the holding of <u>Miltier</u>, and Coakley may be held liable under <u>Bivens</u> for that reliance.

### B. Qualified Immunity of Defendants

As to Plaintiff's claims against the other six Defendants, Abdelaziz, Senko, Hoover, Liston, Owens, and Hunt, whom Plaintiff claims violated his civil rights when they were deliberately indifferent to his serious medical needs, those Defendants are entitled to qualified immunity.  When performing discretionary functions, government officials are "entitled to qualified immunity from liability for civil damages to the extent that 'their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'"  <u>Rish v. Johnson</u>, 131 F.3d 1092, 1095 (4th Cir. 1997) (quoting <u>Harlow v. Fitzgerald</u>, 457 U.S. 800, 818 (1982).

"Under our precedents, officers are entitled to qualified immunity under § 1983 unless (1) they violated a federal statutory or constitutional right, and (2) the unlawfulness of their conduct was 'clearly established at the time.'"  District Of Columbia v. Wesby, __ U.S. __, 138 S.Ct. 577, 589 (2018) citing <u>Reichle v. Howards</u>, 566 U.S. 658, 664, 132 S.Ct. 2088 (2012).  Courts are "permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand.  <u>Pearson v. Callahan</u>, 555 U.S. 223, 236, 129 S. Ct. 808, 818 (2009).  The first prong considers whether, "[t]aken in the light most favorable to the party asserting the injury, [ ] the facts alleged show the officer's conduct violated a constitutional right."  <u>Saucier v. Katz</u>, 533 U.S. 194, 201, 121 S. Ct.

2151, 2156, 150 L. Ed. 2d 272 (2001).  If the evidence establishes a violation of a constitutional right, the second prong is to assess whether the right was "clearly established" at the time of the events at issue.  Id.  "A clearly established right is one that is 'sufficiently clear that every reasonable official would have understood that what he [or she] is doing violates that right."  Mullenix v. Luna, 136 S.Ct. 305, 308 (2015) (quoting Reichle v. Howards, 132 S.Ct. at 2093).

"'[C]learly established law' should not be defined 'at a high level of generality.'" White v. Pauly, 580 U.S. 73, 137 S. Ct. 548, 552 (2017), quoting Ashcroft v. al–Kidd, 563 U.S. 731, 742, 131 S.Ct. 2074 (2011).  "In other words, existing law must have placed the constitutionality of the officer's conduct 'beyond debate.'" D.C. v. Wesby, 138 S. Ct. at 589, quoting al–Kidd, supra, at 741.  This demanding standard protects "all but the plainly incompetent or those who knowingly violate the law."  Malley v. Briggs, 475 U.S. 335, 341, 106 S.Ct. 1092 (1986).  If the right was not clearly established, the qualified immunity doctrine shields defendant officers from liability.

Here, Plaintiff asserts that he complained of abdominal pain on October 6, 2018, around 1:30 a.m.,[9] 3:00 a.m., and at 6:00 a.m.  ECF No. 1 at 7.  At 6:00 a.m. Plaintiff claimed he had pancreatitis and needed to go to the hospital.  ECF No. 35 at 5.  He was evaluated by Defendant Nurse Senko[10] at 8:04 a.m. on that same date, at which time he was evaluated, and his vital signs were measured, including temperature, pulse,

---

[9]  The timeline of Plaintiff's earliest complaint of pain is inconsistent with the time frame documented contemporaneously by BOP employees.  The medical records for Plaintiff's October 6, 2018, encounter state that Plaintiff "summoned custody about 3 am for abdominal pain."  ECF No. 35 at 5.

[10]  Plaintiff further claims that Defendant Hoover, a Health Care Tech/Paramedic was also present that morning when Defendant Senko evaluated him.  However, Defendant Hoover filed a declaration that states he reviewed his work schedule and "confirmed that October 6, 2018[,] was my day off and that [he] was not working that day."  ECF No. 30-10 at 1 – 2.  Further, Defendant Hoover provided a copy of his "daily assignments" which shows that October 6, 2018, was a "Day Off".  ECF No. 30-11 at 2.

respiration, and blood pressure.  Id.  Defendant Senko noted that Plaintiff did not appear in pain, and was not writhing in pain.  Id.  Further, in her declaration filed with the Defendants' motion to dismiss or for summary judgment, Defendant Senko stated that Plaintiff had failed to report for his evening insulin injection for five days prior to his medical complaint on October 6, 2018.  ECF No. 30-4 at 2.  Plaintiff also failed to report for his morning or evening insulin injection on October 6, 2018.  Id.

In her exam comments, Defendant Senko noted that Plaintiff was "agitated and verbally aggressive" and stated, "I am going to sue you for cruel and unusual punishment and my lack of good medical care." Id. at 7.  Further, Defendant Senko noted that Plaintiff, "provides little detail about his symptoms other than claiming it is "pancreatitis".  A review of inmate's medical history does not reveal any such diagnosis.  Inmate has a diagnosis of unspecified abdominal pain but has no significant medical history." Id.  Defendant Senko assessed that Plaintiff was experiencing gastrointestinal upset because:

> Inmate's symptoms are consistent with abdominal upset caused by eating fried food which inmate states upsets his stomach normally.  No life threatening or emergent conditions identified.
>
> Inmate is non compliant with medical advice regarding his diabetes management.  Inmate is not compl[iant] with medical advi[ce] in general.

Id.  Defendant Senko noted that Plaintiff's physical exam was "otherwise unremarkable", and that Plaintiff was stable.  Id.

Further, in her declaration, Defendant Senko stated that "Plaintiff stated he suddenly developed 'pancreatitis' that night after eating fried fish, which he advised usually upsets his stomach." ECF No. 30-4 at 2.  Additionally, Plaintiff "stated he wanted his enzymes checked [and] was advised he would have to place a sick call for blood work

to be obtained."  ECF No. 35 at 7.

The following day, October 7, 2018, Plaintiff was evaluated by a separate provider through the Bureau of Prisons Health Service.  ECF No. 35 at 15.  On that date, the medical provider documented that Plaintiff complained of substantially increased symptoms and that his pain was:

> Located all over his abdomen [which is] distended and tender all over, pain rated at a stabbing 9/10.  [Plaintiff] states pain is worse when he stands up and a little better when he is bent over.  [Plaintiff] also states he feels short of breath, nauseated and some vomiting. . . . [Plaintiff's] H[eart] R[ate] is elevated and blood pressure is within normal limits.  [Plaintiff] is non-compliant [with his chronic disease].

Id. at 16.  Plaintiff was transferred to a local hospital for treatment on that date.  Id. Additional records, including some records filed under seal with the Court, confirm that Plaintiff failed to comply with all medical instructions related to his abdominal surgery and follow up care, including reporting to Health Service for daily wound care and dressing changes, or remaining at Health Services for sufficient time to receive treatment.  ECF Nos. 30-4 at 3 – 4, 35 at 41, 43.

Defendant Senko further stated that while Plaintiff was treated at an outside hospital Mon General, he was "diagnosed with a perforated gastric ulcer, type 2 diabetes mellitus, and acute renal failure."  ECF No. 30-4 at 3.  However, "[n]owhere do the medical records . . . indicate that any of Plaintiff's medical conditions resulted from physical force trauma."  Id.

When evaluating Defendants' conduct in relation to their assertion they are entitled to qualified immunity, the Court first addresses whether, taken in the light most favorable to the party asserting the injury, the facts alleged show the Defendants' conduct violated

a constitutional right.  In the middle of the night of October 6, 2018, between 1:30 and 3:00 a.m., Plaintiff complained to Correctional Officers about abdominal pain.  At 8:04 a.m. that morning he was seen and evaluated by Defendant Senko at Health Services, where he reported he had "unspecified abdominal pain" which he self-diagnosed as pancreatitis.  A review of the medical records provided by Defendants shows that Plaintiff's self-diagnosis was inaccurate.  Moreover, on October 6, Plaintiff refused to provide details of his symptoms to Defendant Senko, to assist in her treatment.  Plaintiff described symptoms of gastrointestinal upset, which was consistent with his meal of fried fish from the night before, and of his history of gastrointestinal upset following consumption of fried foods.  Further, none of Plaintiff's other vital signs taken by Defendant Senko were outside normal ranges.

By the following day, October 7, 2018, Plaintiff presented with additional symptoms, and his vital signs were no longer all within normal range, with an elevated heart rate, although his blood pressure remained in normal limits.  ECF No. 35 at 15.  With the change in reported symptoms, and continued pain, Plaintiff was given IV fluids which improved his vital signs prior to transport to Mon General Hospital.  Id. at 16.

It appears to the Court that the actions of Defendant Senko did not clearly violate Plaintiff's constitutional rights.  Senko promptly provided Plaintiff with medical evaluation based on the information he provided on October 6, 2018, the date Senko evaluated him.  When Plaintiff presented additional symptoms the following day he was further evaluated, treated, and transported for additional treatment at an outside hospital.  The undersigned finds that Senko was not "plainly incompetent" and did not "knowingly violate the law", and thus the doctrine of qualified immunity absolves her of liability.

To the extent that Plaintiff asserts a claim of failure to provide him medical treatment against the other Defendants, Abdelaziz, Liston, Owens, and Hunt, it appears to the Court that Plaintiff fails to state a claim upon which relief may be granted. By Plaintiff's own admission contained in his complaint, he first reported his medical symptoms to correctional officers in the early morning hours of October 6, 2018. As a result, he was placed in a separate cell in the Lieutenant's office for observation until the institutional nurse arrived for work. At 8:04 a.m. on that date, Plaintiff was evaluated by Defendant Nurse Senko.

Accordingly, it appears to the Court that the actions of the correctional officer Defendants Abdelaziz, Liston, Owens, and Hunt, did not clearly violate Plaintiff's constitutional rights. Those Defendants promptly moved Plaintiff to a cell where he could be more closely observed, and obtained medical treatment for him at the earliest possible time on that same date. The undersigned finds that Abdelaziz, Liston, Owens, and Hunt, were not "plainly incompetent" and did not "knowingly violate the law", and thus the doctrine of qualified immunity absolves all four Defendants of liability for failure to provide medical care.

Further, even if considered on its merits, Plaintiff's claim of failure to provide medical treatment fails. "Prisoners alleging that they have been subjected to unconstitutional conditions of confinement must satisfy the Supreme Court's two-pronged test set forth in *Farmer v. Brennan*, 511 U.S. 825, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994)." Scinto v. Stansberry, 841 F.3d 219, 225 (4th Cir. 2016), *cert. denied sub nom*. Phillip v. Scinto, 138 S. Ct. 447, 199 L. Ed. 2d 340 (2017). "In order to establish that she has been subjected to cruel and unusual punishment, a prisoner must prove (1) that "the

deprivation of [a] basic human need was objectively 'sufficiently serious,'" and (2) that "subjectively 'the officials act[ed] with a sufficiently culpable state of mind.'" De'Lonta v. Angelone, 330 F.3d at 634 (quoting Strickler v. Waters, 989 F.2d 1375, 1379 (4th Cir. 1993)).  As explained in Scinto, the "objective" prong of Farmer requires plaintiffs to demonstrate that "the deprivation alleged [was], objectively, 'sufficiently serious.'" 841 F.3d at 225.  Scinto further held that to be "sufficiently serious," the deprivation must be "extreme" by posing "a serious or significant physical or emotional injury resulting from the challenged conditions," or "a substantial risk of such serious harm resulting from ... exposure to the challenged conditions." Id. quoting De'Lonta v. Angelone, 330 F.3d 630, 634 (4th Cir. 2003) (internal quotation marks and citation omitted).  In order to state a cognizable civil rights claim related to medical care, "a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs. It is only such indifference that can offend 'evolving standards of decency' in violation of the Eighth Amendment."  Estelle v. Gamble, 429 U.S. 97, 106, 97 S. Ct. 285, 292, 50 L. Ed. 2d 251 (1976).  In medical needs cases, the Farmer test requires Plaintiff to demonstrate officials' deliberate indifference to a serious medical need that has either "been diagnosed by a physician as mandating treatment or ... is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." Scinto, *quoting* Iko v. Shreve, 535 F.3d 225, 241 (4th Cir. 2008). See Gaudreault v. Municipality of Salem, Mass., 923 F.2d 203, 208 (1st Cir.1990), *cert. denied*, 500 U.S. 956 (1991); Monmouth County Correctional Institutional Inmates v. Lanzaro, 834 F.2d 326, 347 (3d Cir.1987) *cert. denied*, 486 U.S. 1006 (1988). The Fourth Circuit previously explained in Shakka v. Smith, 71 F.3d 162, 166 (4th Cir. 1995), that, "'[b]ecause society does not expect that

prisoners will have unqualified access to health care,' the objective component of an Eighth Amendment claim based on a deprivation of medical attention is satisfied only if the medical need of the prisoner is 'serious.'" *Citing* Hudson v. McMillian, 503 U.S. 1, at 9 (*quoting* Estelle, 429 U.S. at 104)." 71 F.3d at 166. "[P]risoners do not have a constitutional right 'to the treatment of his or her choice,' . . . and '[m]ere disagreement as to the proper medical treatment' does not constitute deliberate indifference." King v. United States, 536 Fed. Appx. 358, 363 (4th Cir. 2013) (*quoting* Spruill v. Gillis, 372 F.3d 218, 235 (3d Cir. 2004). "An inmate's mere disagreement with the course of treatment provided by medical officers will not support a valid Eighth Amendment claim." Jackson v. Sampson, 536 Fed. Appx. 356 (4th Cir. 2013), *citing* Russell v. Shaffer, 528 F.2d 318, 319 (4th Cir. 1975). Application of the Farmer test to Plaintiff's medical condition does not demonstrate that he is entitled to any relief, because he does not meet the first prong of the test. Plaintiff has not been deprived of a basic need because his presentation of abdominal pain on October 6, 2018, was not an objectively sufficiently serious condition. Based on information provided by Plaintiff that he ate fried fish on the night of October 5, 2018, which food Plaintiff knew would upset his stomach, it reasonably appeared on October 6, 2018, that Plaintiff was experiencing routine gastrointestinal upset.

By comparison, a serious medical need is one that has either been diagnosed by a physician as mandating treatment or is so obvious that even a lay person would easily recognize the necessity for a doctor's attention. Serious medical conditions are those recognized to affect an essential life function. Brice v. Virginia Beach Correctional Center, 58 F. 3d 101 (4th Cir. 1995) (A broken jaw was recognized by the parties as a serious medical condition); Webb v. Prison Health Services, 1997 WL 298403 (D. Kansas May 7,

1997) (Carpal tunnel syndrome and a rotator cuff injury were not serious medical conditions); Veloz v. New York, 35 F.Supp.2d 305, 312 (S.D.N.Y. 1999) (A foot condition involving a fracture fragment, bone cyst and degenerative arthritis which plaintiff claimed caused problems walking, pain and cramping, was not sufficiently serious).  Plaintiff was moved to a special cell overnight until the institutional nurse arrived on the morning of October 6, 2018.  Defendant Senko documented that she examined him at 8:04 a.m.[11] on October 6, 2018.  Plaintiff's condition as reported at that time was not a serious medical condition as contemplated by Farmer.

Accordingly, even if the Court were to consider Plaintiff's claims against Defendants on the merits, Plaintiff fails to state a claim upon which relief may be granted.

### C.    Failure to State an Excessive Use of Force Claim

The Court recognizes that "the use of excessive physical force against a prisoner may constitute cruel and unusual punishment [even] when the inmate does not suffer serious injury." Wilkins v. Gaddy, 559 U.S. 34, 34 (2010) (citing Hudson v. McMillian, 503 U.S. 1, 4 (1992).  The Supreme Court held that the "core judicial inquiry," "was not whether a certain quantum of injury was sustained, but rather "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." Wilkins, 559 U.S. at 37, citing Hudson v. McMillian, 503 U.S. at 1, and Whitley v. Albers, 475 U.S. 312, 319 – 321 (1986).

The Fourth Circuit has held that:

> Officers employ force in good faith – and thus permissibly –
> when they are motivated by an immediate risk to physical
> safety or threat to prison order.  But they cross the line into an

---

[11]  Plaintiff asserts that he was seen by Defendant Nurse Senko at 3:30 a.m., two hours after he first complained of pain at 1:30 a.m.: "I was placed in a [ ] cell on the stretcher in the Lieutenant's office in pain for two hours then Nurse Senko arrived."  ECF No. 1 at 8.

> impermissible motive when they inflict pain not to protect safety or prison discipline but to punish or retaliate against an inmate for his prior conduct.  And the use of force on an inmate who is restrained and compliant and posing no physical threat raises the specter of such an impermissible motive.

Dean v. Jones, 984 F.3d 295, 302 (4th Cir. 2021) (internal quotations and citations omitted).

Plaintiff asserts that when he was transported back to his cell following his medical exam on October 6, 2018, that he was "dragged" by officers who injured him, causing a gastric rupture which later required surgery.  However, Plaintiff states that two officers transported him to his cell, and that Officer Liston and Officer Owens each supported him under the arm pit to assist him.  ECF No. 1 at 10.  Plaintiff claimed that "[a]t times my feet/shoes were dragging and at times I could barely use my tiptoes to lift my feet."  Id. at 10 – 11.  The allegations by Plaintiff do not raise a claim upon which relief may be granted.

Plaintiff claims he was in abdominal pain and unable to walk unaided.  As a result, Liston and Owens assisted Plaintiff.  Plaintiff claims that he was "dragged", but by his own admission, asserts that Liston and Owens carried him under his arm pits.  Further, Plaintiff claims that his treatment by Liston and Owens caused or exacerbated him abdominal injuries.  Plaintiff's claim that Liston and Owens "caused" his abdominal injuries is contradicted by Plaintiff's complaint of abdominal pain prior to interacting with Liston and Owens.  Further, Plaintiff's claim that his injuries were "exacerbated" by Liston and Owens is unsupported by the facts.  Rather, again by Plaintiff's own admission, he was carried under his arm pits by Liston and Owens.  Plaintiff characterizes that assistance as being "dragged" but describes no contact with his abdomen which might have caused further injury to his abdomen.

For all the above reasons, the Court finds that Plaintiff has failed to state a claim upon which relief may be granted.  Plaintiff has failed to comply with the Federal Rules of Civil Procedure requirement that only "'a short and plain statement of the claim  showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'"  Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555.  Plaintiff's complaint fails to allege that any individual defendant took specific action which constitute the excessive use of force civil rights violations alleged by Plaintiff. Moreover, a "complaint must be dismissed if it does not allege 'enough facts to state a claim to relief that is *plausible* on its face.'" Giarratano v. Johnson, 521 F.3d 298, 302 (4th Cir. 2008), quoting Bell Atl. Corp. v. Twombly (emphasis added).

As noted above, because "only those questions which are squarely presented to a court may properly be addressed," this Court may not construct Plaintiff's arguments for him.  Weller, 901 F.2d at 391.  Even when liberally construing Plaintiff's allegations, he fails to assert any claims that the named defendants subjected, or caused him to be subjected, to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws.

Accordingly, for all of the above reasons, a review of the complaint pursuant to 28 U.S.C. § 1915A(b), reveals that Plaintiff fails to present a claim as to Liston and Owens upon which relief can be granted.

As to Plaintiff's claims of excessive use of force by Hunt, and that Abdelaziz directed Hunt and other officers to employ excessive use of force, Plaintiff also fails to state a claim upon which relief may be granted.  Plaintiff claims he told Lt. Abdelaziz of his abdominal pain after his medical exam, but that Abdelaziz ordered subordinate

officers to get Plaintiff off the stretcher and return Plaintiff to his unit.  ECF No. 1 at 10,

12.    According to Plaintiff, Defendant Hunt and other officers rolled Plaintiff off the

stretcher, then Hunt laughed at and made several comments about Plaintiff malingering

and that Plaintiff needed to be dragged back to the unit.  Id.  Plaintiff contends that when

Hunt, Owens, and Liston rolled him off the stretcher and onto the floor that they caused

Plaintiff's ulcer ruptures.  ECF No. 1 at 12.

Defendants Abdelaziz and Hunt both filed declarations which accompanied

Defendants' motion to dismiss.  In his declaration, Abdelaziz denied Plaintiff's claims and

stated:

> I understand that Plaintiff alleges I ordered him back to his cell
> despite his medical condition.   As the SHU Lieutenant,
> Plaintiff was not housed in my unit and therefore, not one of
> the inmates assigned to me during that time.  However, when
> I became aware that Plaintiff was asking for medical
> assistance, I called medical to conduct an assessment of
> Plaintiff Davis.  The medical provider took Plaintiff Davis' vital
> signs and determined the situation was not an emergency as
> Plaintiff's vitals were normal.  As such, Plaintiff was sent back
> to his cell.  After Plaintiff was returned to his cell, I returned to
> the SHU and this ended my involvement.

ECF No. 30-6 at 2.  Defendant Hunt's declaration also denied Plaintiff's claims and

stated, "I do not remember the events Plaintiff references in his Complaint nor do I

remember Plaintiff, but I am confident I would not have [ ] and did not use excessive

force in this situation."  ECF No. 30-7 at 1 – 2.

Plaintiff's complaint is not plausible on its face as to Abdelaziz and Hunt.  Plaintiff

fails to allege that Abdelaziz or Hunt took specific action which constituted excessive use

of force.  Even when liberally construing Plaintiff's allegations against Abdelaziz and Hunt,

he fails to assert any claims that those Defendants subjected, or caused him to be

subjected, to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws.  For all of these reasons, a review of the complaint pursuant to 28 U.S.C. § 1915A(b), reveals that Plaintiff fails to present a claim as to Abdelaziz and Hunt upon which relief can be granted.

## V.  RECOMMENDATION

For the foregoing reasons, the undersigned **RECOMMENDS** that Plaintiff's complaint [ECF No. 1] be **DISMISSED  WITH PREJUDICE**.

It is also **RECOMMENDED** that Defendants' motion to dismiss or in the alternative for summary judgment [ECF No. 30] be **GRANTED**.  It is further **RECOMMENDED** that Plaintiff's motions [ECF No. 65, 71] be **DENIED**.

**Within fourteen (14) days** after being served with a copy of this Recommendation, any party may file with the Clerk of the Court, **specific written objections, identifying the portions of the Report and Recommendation to which objection is made, and the basis of such objection.** A copy of such objections should also be submitted to the Honorable Gina M. Groh, Chief United States District Judge. Objections shall not exceed ten (10) typewritten pages or twenty (20) handwritten pages, including exhibits, unless accompanied by a motion for leave to exceed the page limitation, consistent with LR PL P 12.

**Failure to file written objections as set forth above shall constitute a waiver of de novo review by the District Court and a waiver of appellate review by the Circuit Court of Appeals.**  Snyder v. Ridenour, 889 F.2d 1363 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).

This Report and Recommendation completes the referral from the district court. The Clerk is directed to terminate the Magistrate Judge's association with this case.

The Clerk is directed to provide a copy of this Report and Recommendation to the *pro se* Petitioner by certified mail, return receipt requested, to his last known address as reflected on the docket sheet, and to all counsel of record, as applicable, as provided in the Administrative Procedures for Electronic Case Filing in the United States District Court for the Northern District of West Virginia.

DATED:       May 24, 2022

/s/ *Robert W. Trumble*
ROBERT W. TRUMBLE
UNITED STATES MAGISTRATE JUDGE